IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRACEY TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-990 (RDA/WEF) |
| | ) |
| UNITED WAY WORLDWIDE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant United Way Worldwide's Motion to Dismiss (Dkt. 10). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering the Motion together with the Complaint (Dkt. 1), the Memorandum in Support (Dkt. 11), Plaintiff's Opposition (Dkt. 14), and Defendant's Reply (Dkt. 15), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

*Pro se* Plaintiff Tracey Tucker[2] asserts three counts in her Complaint: (i) an alleged violation of the Family and Medical Leave Act (the "FMLA"); (ii) an alleged violation of the

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] Although Plaintiff's Complaint asserts that it is submitted "by and through undersigned counsel," Dkt. 1 at 1, it is clear from the signature page that Plaintiff is proceeding *pro se*, Dkt. 1 at 12.

1

Americans with Disabilities Act (the "ADA"); and (iii) an alleged violation of the Virginia Human Rights Act (the "VHRA"). Dkt. 1. In support of those claims, Plaintiff alleges the following.

Plaintiff was employed from approximately April 2022 through July 2023 as a Paralegal Manager and Assistant to the General Counsel at Defendant in Alexandria, Virginia. *Id.* ¶ 1. In her role as Paralegal Manager, Plaintiff reported directly to Defendant's General Counsel, Odessa Jackson. *Id.* ¶ 9. Plaintiff had previously reported to Jackson in her role as Supervisory Paralegal Manager at Howard University. *Id.*

As Paralegal Manager for Defendant, Plaintiff managed the day-to-day operations of Defendant's Office of General Counsel, including database management, record keeping, invoice processing, and other tasks as assigned. *Id.* ¶ 10. Plaintiff asserts that she performed her position in a competent and professional manner to the best of her abilities. *Id.*

In June 2022, Plaintiff began experiencing facial and maxillary pain and continuous headaches. *Id.* ¶ 11. Plaintiff's pain continued to worsen. *Id.* In July 2022, Plaintiff requested a week of telework to attempt to alleviate her pain, which she viewed as triggered by speaking. *Id.* ¶ 12. Plaintiff believes that telework would have been a reasonable accommodation. *Id.* Defendant denied Plaintiff's July 2022 telework request. *Id.* ¶ 13.

Plaintiff subsequently made several more requests to telework. *Id.* ¶ 14. Plaintiff alleges that Defendant denied or ignored Plaintiff's requests, even though Defendant's policy permitted all employees to work remotely two days a week. *Id.*

In mid-October 2022, Plaintiff was formally diagnosed with trigeminal neuralgia. *Id.* ¶ 15. Plaintiff asserts that trigeminal neuralgia triggers a nerve in the face, which causes chronic, sudden, and severe facial pain. *Id.* ¶ 16. Plaintiff alleges that her pain affects her major life activities of

concentrating, speaking, communicating, thinking, and working. *Id.* Plaintiff asserts that it can be triggered by speaking and that it can be treated but not cured. *Id.*

Through the end of 2022 and into 2023, Plaintiff asserts that she continued to experience sudden, severe pain due to her trigeminal neuralgia. *Id.* ¶ 17.

In mid-March 2023, Plaintiff met with Jackie Gordon, Defendant's Director of People and Culture ("P&C"), and told Gordon that she believed she could continue working with some reasonable accommodations. *Id.* ¶ 18. After the meeting, it took weeks for Gordon to send Defendant's reasonable accommodation request form to Plaintiff. *Id.*

On May 3, 2023, Plaintiff submitted a reasonable accommodation request form seeking "[a] computer glare screen and occasional light adjustment" and intermittent leave for medical appointments. *Id.* ¶ 19. At the time, Plaintiff believed that her requested accommodation would be sufficient to enable her to continue performing her job. *Id.* ¶ 20. Plaintiff asserts that Defendant refused to engage in the interactive process and that Plaintiff heard nothing from Defendant regarding her requests for weeks. *Id.* ¶ 21. Plaintiff further asserts that, while her reasonable accommodation request was pending, she was not allowed to take time off from work to seek necessary medical treatment. *Id.* ¶ 22.

Plaintiff reports that her condition deteriorated and that she was admitted to the hospital for emergency treatment. *Id.* ¶ 23. Plaintiff was then advised that her condition was so severe that she required short-term full-time medical leave. *Id.* Accordingly, on May 19, 2023, Plaintiff requested short-term disability ("STD") leave and FMLA leave. *Id.* ¶ 24. Per Defendant's policy, STD leave and FMLA leave run simultaneously, but STD is paid whereas FMLA is not. *Id.*

Pursuant to Defendant's policies, New York Life Insurance Company ("NYL") would assist in processing Plaintiff's leave requests. *Id.* ¶ 26.

On May 23, 2023, Plaintiff contacted Gordon to follow up on her May 3rd and May 19th requests. *Id.* ¶ 27. Gordon responded by acknowledging the delay. *Id.* Gordon stated that final determination on Plaintiff's requests would be made once Jackson returned from her paid time off, but that it was unclear when that would be. *Id.*

Plaintiff then texted Jackson on May 26, 2023, to ensure that Jackson knew that Plaintiff was out of the office due to a hospitalization. *Id.* ¶ 28. Jackson responded, "all [of] your medical documentation goes to P&C, please do not send to me." *Id.*

Plaintiff continued to contact Defendant with the expectation that Defendant would respond to her requests. *Id.* ¶ 29. Plaintiff texted Jackson and Senior Associate General Counsel Keba Marshall throughout June 2023 to notify them of her continued need for full-time leave. *Id.* ¶ 29. Neither Jackson nor Marshall responded to Plaintiff's text messages, despite previously communicating via text messages regarding work. *Id.* ¶ 30.

Plaintiff asserts that Defendant never engaged with Plaintiff in any interactive process to determine a reasonable accommodation. *Id.* ¶ 31.

On May 23, 2023, NYL notified Plaintiff that her eligibility for FMLA and STD leave was undetermined. *Id.* ¶ 33. On May 26, 2023, NYL confirmed that Plaintiff was eligible for FMLA pending determination and that her request for STD leave was pending determination. *Id.* ¶ 34. On May 31, 2023, NYL notified Plaintiff that it had determined that she was eligible for continuous FMLA leave through June 2, 2023, but that her STD leave request remained pending determination. *Id.* ¶ 35. Approximately one week later, on June 7, 2023, NYL notified Plaintiff that her request for continuous FMLA leave was approved and extended through June 9, 2023, and that her STD leave request was still pending determination. *Id.* ¶ 36.

Weeks later, on June 22, 2023, NYL notified Plaintiff that it had denied her STD leave request, claiming that Plaintiff's diagnosis of trigeminal neuralgia does not constitute a functioning impairment sufficient for STD leave. *Id.* ¶ 37. The following day, on June 23, 2023, NYL notified Plaintiff that she was eligible for continuous FMLA leave for June 10, 2023, through July 6, 2023. *Id.* ¶ 38. After receiving the letter, Plaintiff submitted additional documentation regarding her condition to NYL. *Id.*

On July 6, 2023, Plaintiff appealed NYL's denial of her STD leave. *Id.* ¶ 39. Plaintiff provided additional explanations and an authorization for NYL to obtain medical records from her providers. *Id.*

On July 12, 2023, NYL retroactively denied Plaintiff's request for FMLA leave from June 10, 2023, through July 6, 2023. *Id.* ¶ 40.

Then, on July 13, 2023, NYL notified Plaintiff that she was eligible for continuous FMLA leave from May 19, 2023, to August 1, 2023, pending determination. *Id.* ¶ 41. The next day, Defendant terminated Plaintiff. *Id.* ¶ 42. Defendant stated that it was retroactively terminating Plaintiff's employment effective June 10, 2023, labeling her time on FMLA leave as "unexcused absences." *Id.* ¶ 43. The letter further asserted that Plaintiff's FMLA status had been denied as of June 10, 2023, and that Plaintiff had been able to return to work on intermittent leave in June. *Id.* ¶ 44.

On July 17, 2023, NYL notified Plaintiff that her previous request for continuous FMLA leave was approved and extended to August 1, 2023. *Id.* ¶ 45.

Confusingly, Plaintiff asserts that, on July 3, 2023, she submitted documentation that she was permitted to return to work and that she submitted a "Return to Work Certificate." *Id.* ¶ 47.

On September 14, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that she had been subject to discrimination based on her disability as well as retaliation. *Id.* ¶ 5. On April 4, 2025, Plaintiff received a Notice of Right to Sue from the EEOC. *Id.* ¶ 6.

### B. Procedural Background

On June 11, 2025, Plaintiff filed her Complaint. Dkt. 1. On July 24, 2025, Defendant filed its Motion to Dismiss. Dkt. 11.[3] On July 25, 2025, the Court issued a *Roseboro* notice. Dkt. 13. On August 13, 2025, Plaintiff filed her Opposition. Dkt. 14. Thereafter, on August 19, 2025, Defendant filed its Reply. Dkt. 15.

### II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v.*

---

[3] In the Memorandum in Support, there is a reference to an Amended Complaint. Dkt. 11 at 1. But Plaintiff has not filed an Amended Complaint, and other references in the document correctly refer to the Complaint (Dkt. 1). Accordingly, that appears to be a typographical error.

*Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion.  *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### III.  ANALYSIS

Defendant seeks to dismiss each count of Plaintiff's Complaint.  The Court will address each argument in turn.

#### A.  FMLA

As an initial matter, the Court recognizes that Defendant correctly argues that "[i]nterference and retaliation are distinct causes of action under the FMLA and must be pled individually."  *Twine v. AT&T, Inc.*, 755 F. Supp. 3d 959, 981-82 (E.D. Va. 2024).  Here, Plaintiff appears to be asserting both claims in a single cause of action (Count 1).  Although the Court recognizes that this is inappropriate, in deference to Plaintiff's *pro se* status, the Court will analyze both of Plaintiff's FMLA claims.

##### i.  FMLA Interference

As the Fourth Circuit has recognized, "to make out an FMLA interference claim, an employee must demonstrate (1) that [s]he is entitled to an FMLA benefit; (2) that h[er] employer interfered with the provision of that benefit; and (3) that the interference caused h[er] harm."  *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 796 (4th Cir. 2023).  The primary dispute between the parties is whether Plaintiff's termination constitutes interference.

Plaintiff alleges that NYL determined that she was entitled to take FMLA leave through August 1, 2023.  Dkt. 1 ¶ 45.  Plaintiff further alleges that her Return-to-Work Certificate stated

that she could return to work on July 3, 2023. *Id.* ¶ 47. Yet, Plaintiff alleges that she was terminated on July 13, 2023, retroactively to June 10, 2023. *Id.* ¶ 43. Thus, Plaintiff alleges that her termination interfered with her ability to take FMLA leave from June 10, 2023, through at least July 3, 2023 (when she had her Return-to-Work Certificate) or August 1, 2023 (the time authorized by NYL). Courts have held that "the treatment of the absences as unauthorized leave" which leads to a termination can "constitute[e] interference with his rights under the FMLA." *Bennett v. Spartanburg Cmty. Coll.*, 2023 WL 9067801, at *4 (D.S.C. Oct. 24, 2023), *report and recommendation adopted*, 2023 WL 8540915 (D.S.C. Dec. 11, 2023).[4] Although the facts alleged are somewhat confusing, at this stage, Plaintiff has alleged some facts that plausibly state an interference claim. Accordingly, at this stage in the proceedings, the Court will deny the Motion.

ii.     FMLA Retaliation

To state a *prima facie* claim of FMLA retaliation, Plaintiff must allege "that [s]he engaged in protected activity, that the employer took adverse action against h[er], and that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). Defendant's argument rests on the fact that Plaintiff alleges that, on July 12, 2023, NYL retroactively denied Plaintiff's request for FMLA leave from June 10, 2023, through July 6, 2023. Dkt. 1 ¶ 40. But Plaintiff simultaneously alleges

---

[4] Plaintiff's case differs from others where courts have held that there is no interference claim because the employee is fired after the employee returns to work from FMLA leave. *See, e.g.*, *Hines v. Blue Cross & Blue Shield of N. Carolina*, 2020 WL 3452155, at *3 (M.D.N.C. June 24, 2020) ("This allegation fails to state a claim for interference because employees, like Plaintiff, who apply for and receive FMLA leave and are terminated only after being reinstated to their position 'have not been denied their FMLA rights; instead, they have received all the benefits to which they are entitled.'"). Plaintiff, by contrast, alleges that she was terminated in the midst of her FMLA leave, while she was still eligible for and approved to more leave.

that, on June 23, 2023, NYL determined that Plaintiff was eligible for FMLA leave and that NYL ultimately concluded that Plaintiff was approved for FMLA leave from May 19, 2023, through August 1, 2023. *Id.* ¶¶ 38, 41, 46. Thus, Plaintiff's termination in the midst of what was ultimately approved FMLA leave creates a reasonable inference of FMLA retaliation. Defendant's argument that Defendant terminated Plaintiff because it understood that Plaintiff was *not* on approved leave is an argument better made at a later stage of the case. Accordingly, the Motion will also be denied in this regard.

B.   Disability Discrimination

Defendant next seeks to dismiss Plaintiff's disability discrimination claims in Counts 2 (the ADA) and 3 (the VHRA). As an initial matter, the Court analyzes these claims together. *See Flippo v. Am. Home Prod. Corp.*, 59 F. Supp. 2d 572, 578 (E.D. Va. 1999) ("Because they are 'substantively identical statutes,' the Court analyzes the ADA and VHRA discrimination claims together."). It is unclear what kind of disability claim Plaintiff intends to bring. Although Plaintiff makes several references to Defendant denying her a reasonable accommodation, in Counts 2 and 3 Plaintiff does not make any reference to a failure to accommodate claim. Thus, the Court cannot construe Plaintiff as attempting to state a failure to accommodate claim.

To the extent that Plaintiff attempts to assert a disparate treatment claim, Plaintiff's Complaint fails to state a claim. To establish a disability discrimination claim under the ADA, a plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (quotation omitted). Plaintiff alleges that "Defendant took adverse employment actions against Plaintiff and subjected Plaintiff to different terms and conditions of

9

her employment based on her disability." Dkt. 1 at ¶¶ 65-67, 75. Yet, Plaintiff's Complaint contains no allegations that Plaintiff was treated differently from anyone else. Accordingly, the Motion will be granted in this regard.

## IV. CONCLUSION

In sum, Plaintiff has plausibly alleged her FMLA claims. At this point, however, Plaintiff has not plausibly alleged a disability discrimination claim, and the Court does not construe the Complaint as attempting to assert a failure to accommodate claim, based on the language in the counts of the Complaint. Defendant does not appear to be seeking dismissal with prejudice, and, at this point, the Court could not say that permitting further amendment would be futile. Thus, the Court will dismiss Counts 2 and 3 but provide leave to amend.

Accordingly, it is hereby ORDERED that the Motion to Dismiss (Dkt. 10) is GRANTED IN PART and DENIED IN PART. The Motion is denied with respect to Count 1 and granted with respect to Counts 2 and 3; and it is

FURTHER ORDERED that Counts 2 and 3 are DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that, if Plaintiff desires to amend her complaint, she is DIRECTED to file any Amended Complaint on or before March 13, 2026. If Plaintiff decides not to further amend her complaint, then Defendants are DIRECTED to file an Answer within fourteen days of the passage of the amendment deadline.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties of record.

It is SO ORDERED.

Alexandria, Virginia
February 2, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge